[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 11, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10733
Non-Argument Calendar

_____

BIA No. A74-263-711

MARIA ANDRES MENDEZ,
a.k.a. Maria Andrez Mendez,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(August 11, 2008)**

Before CARNES, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Maria Andres Mendez, through counsel, seeks review of the Board of Immigration Appeals's ("BIA's") order dismissing her appeal and affirming the Immigration Judge's ("IJ's") decision denying her application for asylum and withholding of deportation under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1251(a)(1)(B) (1994), 8 C.F.R. § 208.16(c). First, Mendez argues that she established her eligibility for asylum and withholding of deportation based upon her membership in the social group of "Guatemalan women." Second, Mendez argues that she established that she was entitled to CAT relief, and she asserts that we should remand to the BIA for additional investigation or explanation because the IJ failed to make any findings of fact relative to the injustices against Guatemalan women, and, specifically, failed to consider the evidence contained in the Country Reports. For the reasons set forth more fully below, Mendez's petition is dismissed in part and denied in part.

Mendez, a native and citizen of Guatemala, entered the United States without inspection on or about May 1, 1993. On August 28, 1995, the Immigration and Naturalization Service issued Mendez an order to show cause and a notice of a hearing, charging that she was subject to deportation under INA § 241(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B) (1994), as an alien who entered the United States without

inspection.

On her asylum application, Mendez indicated that she sought relief based upon her political opinion, race, and religion. She indicated that guerrillas attacked her father because he did not accept their "offer." Mendez and her mother also suffered "hard problems." Mendez stated that the reason she was applying for asylum was because she could not continue to live in her country because the guerrillas were "starting to give us a lot [of] mental problems with our lands or my father['s] lands." Mendez explained in her application that her father refused to sell his land to the guerrillas because of the price they offered.

At her deportation hearing, Mendez testified that she came to the United States because the guerillas wanted to sexually assault her and take her. Mendez explained that "they wanted us to . . . give up our land. And my father had some land and they were the ones that, that decided the price they wanted to give my father. And eventually, they took away the land. And then they wanted to take me by sequestering me." Mendez further explained that "sequestering" meant that "[t]hey take young men and then they obligate them to stay with them, and then they take advantage of them by trying forcefully to be with them." Mendez was asked what she thought would happen if she returned, to which she replied:

> Well, I understand that, I am afraid, but I understand that there is no
> more guerilla. And, however, I speak to my mother and she tells me
> that there are robbers and, or groups of people that go around

3

threatening people and telling them that if they don't do what they say, they'll steal their money. That's what my mother said.

In his written order, the IJ denied Mendez's application for asylum, withholding of deportation and CAT relief, and ordered Mendez deported to Guatemala.

The BIA dismissed Mendez's appeal. The BIA stated that Mendez "failed to demonstrate the required nexus between the events and fears she described, . . . and her race, religion, nationality, membership in a particular social group, or political opinion." Mendez "did not establish past persecution or a well-founded fear of persecution on account of a statutorily protected ground, as required for asylum eligibility, or to establish a probability of such persecution, as required for withholding of deportation." Moreover, Mendez did not establish that she was entitled to CAT relief because she failed to "show it was more likely than not that she would suffer torture in her native land."

I.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). As the BIA did not expressly adopt the IJ's decision, we review only the BIA's decision.

To the extent that the BIA's decision was based on a legal determination, our

4

review is de novo.  Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001).  The BIA's factual determinations are reviewed under the substantial evidence test.  Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1286 (11th Cir. 2005).  Under the substantial evidence test, we cannot find or consider "facts not raised in the administrative forum, nor can we reweigh the evidence from scratch." Id. (quotation omitted).  We must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Id. (quotation omitted).  We will reverse the agency's factual determinations only where the record compels reversal.  Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).  The record is reviewed in the light most favorable to the BIA's decision, and all reasonable inferences are drawn in favor of that decision.  Forgue, 401 F.3d at 1286.  However, under the INA, a court may review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right."  8 U.S.C. § 1252(d)(1).

The Attorney General may grant asylum if an alien is a refugee within the meaning of the INA.  Mejia v. U.S. Attorney Gen., 498 F.3d 1253, 1256 (11th Cir. 2007).  The INA defines "refugee" as:

[A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of

5

persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). The alien bears the burden to demonstrate "(1) past persecution on account of a statutorily protected ground or (2) a well-founded fear of future persecution on account of a protected ground." Mejia, 498 F.3d at 1256.

Under the INA, an alien shall not be deported to a country if her life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1231(b)(3). A petitioner who fails to establish eligibility for asylum is usually unable to carry the burden regarding withholding of deportation. Al Najjar, 257 F.3d at 1292-93.

Mendez failed to administratively exhaust her claim that she was persecuted based upon her membership in the social group of "Guatemalan women." Mendez specifically noted on her asylum application that she sought relief based upon her political opinion, race, and religion. At her deportation hearing, Mendez testified that the guerillas wanted to sexually assault her, and she also stated that other young women had been raped by the guerillas. However, Mendez maintained that the guerillas wanted to kill her family and take her away, not because of her status as a woman, but because the guerillas wanted her father's land. Significantly, Mendez argued in her brief on appeal to the BIA that she was persecuted and had a

6

well-founded fear of persecution on account of her political opinion. Accordingly, we lack jurisdiction to consider Mendez's petition with respect to her claims that are based upon her membership in the social group of Guatemalan women and, therefore, we dismiss her claims for asylum and withholding of deportation. See 8 U.S.C. § 1252(d)(1); see also Fernandez-Bernal v. Attorney General, 257 F.3d 1304, 1317 n.13 (11th Cir. 2001) (interpreting this exhaustion requirement as jurisdictional).[1]

## II.

To be eligible for relief under CAT, an alien has the burden to show that she will, more likely than not, be tortured if removed to her country of removal. 8 C.F.R. § 208.16(c)(2). "Torture" is defined as

> any act by which severe pain or suffering, whether physical or mental,
> is intentionally inflicted on a person for such purposes as obtaining
> from him or her or a third person information or a confession,

---

[1]We note that, even if we had jurisdiction to review Mendez's claims for asylum and withholding of deportation, we would deny the petition for review with respect to those claims because substantial evidence supports the BIA's finding that Mendez failed to demonstrate the required nexus between the events she described and her gender. Mendez's or her father's refusal to cooperate with guerillas does not constitute evidence of past persecution based upon a statutorily protected ground. See Ruiz v. U.S. Attorney Gen., 440 F.3d 1247, 1258 (11th Cir. 2006) (stating that "evidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground"). Further, Mendez failed to show a well-founded fear of future persecution, given that she stated she was afraid to return to Guatemala only because robbers would steal her money. However, being the victim of criminal activity does not constitute persecution on a protected ground. See id. She also failed to establish a pattern of persecution of similarly situated individuals to support a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(2)(iii).

7

punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18(a)(7).

Initially, we need not remand for additional explanation of the denial of CAT relief. The BIA and IJ considered the evidence in the record, which included the Country Reports, and concluded that Mendez did not meet her burden to warrant CAT relief. These findings are sufficient for us to review and are supported by the record.

Substantial evidence supports the BIA's conclusion that Mendez is not entitled to CAT relief because Mendez failed to show that she will more likely than not be tortured if she is returned to Guatemala. 8 C.F.R. § 208.16(c)(2). Specifically, Mendez failed to offer any evidence or testimony that she would be tortured "at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." See 8 C.F.R. § 208.18(a)(1). Accordingly, the record does not compel the conclusion that Mendez is entitled to

8

relief under CAT.[2]

In light of the foregoing, Mendez's petition for review with respect to her claims for asylum and withholding of deportation are dismissed and her petition for review with respect to her CAT claim is denied.

**PETITION DISMISSED IN PART; DENIED IN PART.**

---

[2] Mendez failed to raise with the BIA her argument that she was "constructively tortured," and, therefore, we lack jurisdiction to consider this unexhausted claim. See 8 U.S.C. § 1252(d)(1).