[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-17009
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 10, 2009
THOMAS K. KAHN
CLERK

Agency No. A099-638-337

XINLU WANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 10, 2009)

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Xinlu Wang, a native and citizen of China, petitions this court for review of

the Board of Immigration Appeals' ("BIA") affirmance of the Immigration Judge's

("IJ") order of removal and denial of asylum, withholding of removal, and relief under the CAT. After a thorough review of the record, we deny the petition.

Wang entered the United States on July 3, 2005, remained beyond the expiration of his visa, and was charged with removability under 8 U.S.C. § 1227(a)(1)(B). Wang then applied for asylum, alleging that he had been persecuted by Chinese authorities due to his religious beliefs. According to Wang's testimony at the removal hearing, in December 1999 or January 2000, a family friend, Mr. Ho, introduced Wang to the art of Yi Guan Dao, a religious practice that combined principles from Confucius and Buddha and involved burning incense, ritual washing, and praying. Wang and three others would meet in his home twice a month to practice Yi Guan Dao. In September 2000, the police came to Wang's home and arrested the practitioners. Although the others were released, the police–believing Wang to be the leader–detained Wang for three days. During his detention, Wang was interrogated daily and beaten for twenty minutes each time he was interrogated. As a result of the beatings, Wang had scars on his back. After three days, Wang posted bail and was released with orders to report to the police weekly and to cease his participation in Yi Guan Dao. Thereafter, Wang was unable to find significant work and was repeatedly fired. He complied with the weekly reporting, and although he was interrogated each time,

he was not detained or beaten. In July 2005, Wang came to the United States; he feared he would be jailed if he returned to China.

The corroborating evidence submitted included the State Department Religious Freedoms Report of 2006 and the Country Report of Human Rights of 2006, which acknowledged that the government took action against religious "cults," but did not mention Yi Guan Dao specifically, a letter from Wang's wife, and an article on Yi Guan Dao, which indicated that members of Yi Guan Dao had been imprisoned and even executed for their participation.

The IJ denied relief, concluding that the single detention and minor beating did not rise to the level of persecution. The IJ considered the fact that Wang had not required medical attention after the detention and noted that there was no evidence Wang had continued his religious practice after his release. The IJ also considered that Wang had not experienced any other difficulties with authorities after his release and that his family remained in China unharmed. Accordingly, the IJ found that Wang had not shown a well-founded fear of future persecution. Because the asylum claim failed, the IJ also denied withholding of removal and CAT relief.

Wang appealed to the BIA, which dismissed the appeal. According to the BIA, although Wang was mistreated, the "regrettable actions considered cumulatively do not rise to the level of persecution." The BIA further concluded

3

Wang had not shown a well-founded fear, considering he had remained in China for several years after his release, and there was no evidence he had continued his religious practices or suffered any other harm. This petition for review followed.

Wang argues that the cumulative effect of the detention, interrogations, beatings, inability to find work, and the requirement that he report to police weekly constitute persecution. Wang also argues that he established a well-founded fear of future persecution because he faced the possibility of arrest, as police had been looking for him since he fled China.

We review only the BIA's decision unless it expressly adopts the opinion of the IJ. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Because, in this case, the BIA issued its own opinion and did not adopt the opinion or reasoning of the IJ, we review only the BIA's decision. Id.

Legal determinations are reviewed de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). We review factual findings "under the highly deferential substantial evidence test." Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc). We will affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." D-Muhumed, 388 F.3d at 817. "To reverse a factual finding by the BIA, this court must find not only that the evidence supports a contrary conclusion, but that it compels one." Farquharson v. U.S. Att'y Gen., 246

4

F.3d 1317, 1320 (11th Cir. 2001). "[O]nly in a rare case does the record compel the conclusion that an applicant for asylum suffered past persecution or has a well-founded fear of future persecution." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1239 (11th Cir. 2006).

An alien is eligible for asylum relief if he is outside of his country of nationality and "is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290 (11th Cir. 2006) (quoting 8 U.S.C. § 1101(a)(42)(A)). To establish asylum eligibility, an applicant "must, with specific and credible evidence, show (1) past persecution on account of a statutorily listed factor, or (2) a 'well-founded fear' that the statutorily listed factor will cause future persecution." Zheng, 451 F.3d at 1290.

An applicant who cannot demonstrate past persecution still can obtain asylum if he shows that he has a well-founded fear of future persecution. De Santamaria v. U.S. Att'y. Gen., 525 F.3d 999, 1007 (11th Cir. 2008) (citing 8 C.F.R. § 208.13(b)(2)). To establish a well-founded fear of future persecution, the applicant must demonstrate that he has: "(1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." De

Santamaria, 525 F.3d at 1007.[1] The subjective prong is satisfied "by the applicant's credible testimony that he or she genuinely fears persecution," and the objective prong is satisfied if the applicant establishes that he "has a good reason to fear future persecution." Id. The petitioner's well-founded fear of persecution must be because of one of the statutorily listed factors, such as his religion. See, e.g. INS v. Elias-Zacarias, 502 U.S. 478, 482, 112 S.Ct. 812, 816, 117 L.Ed.2d 38 (1992). The petitioner must establish this causal connection by "presenting specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution" on account the statutory factor. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (citation and quotation omitted). In addition, an applicant's fear of future persecution is significantly undermined if, at the time of his asylum application, his family members remain unharmed in his country of origin. Ruiz v. U.S. Att'y. Gen., 440 F.3d 1247, 1259 (11th Cir. 2006).

An alien is entitled to withholding of removal if he can show that his life or freedom would be threatened based on one of the five protected grounds. 8 C.F.R. § 208.16(b). If the alien can prove a past threat to life or freedom, there is a

---

[1] An applicant may also establish a well-founded fear of future persecution by showing that he is a member of, or is identified with, a group that is subjected to a pattern or practice of persecution. Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008) (quoting 8 C.F.R. § 208.13(b)(2)(iii)). In this case, Wang did not argue before the IJ or BIA that China had a pattern or practice of persecution against members of his religion; therefore, he has not exhausted this issue and we do not consider it. Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001); Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250-51 (11th Cir. 2006).

6

presumption that the alien's life or freedom would be threatened in the future. 8 C.F.R. § 208.16(b)(1). An alien who seeks relief under CAT carries the burden of establishing "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004) (quoting 8 C.F.R. § 208.16(c)(2)). If an applicant cannot establish eligibility for asylum relief, he cannot meet the more stringent burden for withholding of removal or CAT relief. Zheng, 451 F.3d at 1292.

Upon review, and giving due deference to the agency's factual findings, we conclude the record does not compel the conclusion that Wang suffered past persecution. Persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation. Sepulveda v. U.S. Att'y Gen, 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotations omitted). Even considering the events cumulatively, the three-day detention, during which Wang was interrogated and beaten for twenty minutes a day, do not rise to the level of persecution. Djonda v. U.S. Att'y. Gen., 514 F.3d 1168, 1174 (11th Cir. 2008) (explaining that a brief detention and minor beating resulting in scratches and bruises and a two-day hospital stay do not compel the conclusion that the petitioner suffered persecution). Although Wang contends the beatings were severe, there was no evidence Wang required any medical treatment for any injuries after his

7

release.  See Djonda, 514 F.3d at 1174 (considering medical evidence showing the petitioner suffered scratches and bruises and concluding that the evidence did not compel a finding of past persecution); Zheng, 451 F.3d at 1290-91 (concluding that there was no persecution where the petitioner was detained for five days but suffered no injuries).  Considering the record, this incident does not have the severity found in other cases in which the record has compelled a conclusion that the petitioner was persecuted.  See, e.g., De Santamaria, 525 F.3d 999 (involving verbal threats, assault resulting in hospitalization, trauma from torture and fatal shooting of family groundskeeper who refused to reveal petitioner's location, kidnaping and beating with guns resulting in hospitalization); Niftaliev v. U.S. Att'y Gen., 504 F.3d 1211 (11th Cir. 2007) (involving threats, numerous interrogations and beatings by police during a 15-day detention resulting in 2-month hospitalization, and two subsequent physical assaults on street).

Moreover, even if we consider Wang's inability to find work and the requirement that he report to authorities, the record would not compel a different conclusion.  See Zheng, 451 F.3d at 1290 (explaining that the "inability to find another job . . .  is also insufficient to show past persecution.").  Accordingly, Wang has not shown past persecution.[2]

_____

[2] Even if we were compelled to conclude Wang suffered past persecution, the government has rebutted the presumption of future persecution by showing a "fundamental change in circumstance such that the alien no longer has a well-founded fear of persecution."  8 C.F.R.

8

Additionally, Wang has not shown a well-founded fear of future persecution that is objectively reasonable.[3] Wang remained in China for several years after his detention without incident. His wife, child, and siblings continue to live in China without harm. Wang's fear that he will be arrested for his failure to report does not amount to a well-founded fear entitling him to asylum. See Sepulveda, 401 F.3d at 1231 (requiring applicant to present specific, detailed facts showing a good reason to fear that he will be singled out for persecution on account of the statutory factor).

Additionally, nothing in the corroborating evidence alters our analysis. The State Department Reports do not mention Yi Guan Dao, and the articles that indicate Yi Guan Dao members were imprisoned and executed in the past appear to be from 1995, well before Wang's detention and release. Thus, we not compelled to conclude that Wang has an objectively reasonable fear of future persecution, especially given the lack of evidence that Wang continues to be involved in the practice of Yi Guan Dao.

---

§ 208.13(b)(1)(i)(A); Sepulveda, 401 F.3d at 1231. In this case, as the BIA noted, there was no evidence that Wang continues to engage in the practice of Yi Guan Dao.

[3] The IJ found Wang credible; therefore, we conclude Wang met the subjective component of the well-founded fear analysis.

Finally, because Wang cannot show that he was eligible for asylum, he cannot meet the more stringent burden for withholding of removal or CAT relief. Zheng, 451 F.3d at 1292.

PETITION DENIED.